# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PARRIS WATSON** | : CIVIL ACTION |
| v. | : |
| **COMMUNITY PROPERTY MANAGEMENT, PHILADELPHIA CORP. ON AGING and PENN PRESBYTERIAN HOSPITAL** | : NO. 19-2918 |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                **August 6, 2019**

Parris Watson, acting *pro se* and seeking leave to proceed *in forma pauperis*, brings claims against Community Property Management ("CPM"), Philadelphia Corporation on Aging ("PCA") and Penn Presbyterian Hospital ("PPH") for forcing him to perform unpaid labor and for health care fraud in connection with his service as a caregiver to a relative. For the following reasons, we shall grant Watson leave to proceed *in forma pauperis* and dismiss his complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief can be granted.

## Background

According to the complaint, Watson "was swindled into a caregiver role" by PCA, which forced him to provide labor as a "family caregiver" to an unidentified relative from 2014 to 2018.[1] The relative resided in an apartment for seniors in the Stephen Smith Towers ("Towers"), which was owned by CPM and subsidized by HUD.[2] Watson alleges that PCA coordinated all of his relative's service providers and "administered" the "family

---

[1] Compl. at 8 (Doc. No. 2).

[2] *Id.*

caregiver role." In this capacity, PCA paid him "poverty wages" amounting to only $10,000.00 per year and gave him "no designated time off" in this role.[3] He claims that the caregiver role was "fully binding" and that his responsibilities could be terminated only by "death or institutionalization of either the caregiver or relative."[4] At the same time, he claims that PCA did not provide him with a contract or other document specifying his responsibilities as a caregiver.[5]

Watson contends that PCA "made false statements regarding the scope and nature of caregiver tasks."[6] He alleges that it "misrepresented" to CPM and PPH[7] staff that it was paying him to be a caregiver to his relative when in fact he was only "paid a welfare check." He claims that these misrepresentations "supported service providers in demanding forced labor."[8] He also alleges that when he told the PCA service coordinator about his concerns regarding a visiting doctor's over-prescribing narcotics to his relative, she responded by stating that she liked the doctor. Two months later, the service coordinator "made assertions that [Watson] was possibly guilty of elder abuse."[9]

With respect to his claims against CPM, Watson alleges that CPM employees forced him to perform tasks in his relative's apartment, including moving furniture,

---

[3] *Id.* at 8, 9.

[4] *Id.* at 8.

[5] *Id.* at 9.

[6] *Id.*

[7] Watson's relative was hospitalized at PPH numerous times between 2016 and 2018. *Id.* at 10.

[8] *Id.* at 9.

[9] *Id.*

cleaning walls and "assisting [with] impromptu bedbug inspections," without pay.[10]  He contends that they forced him to perform this labor by making false and unjustified "threats of legal action" against him and his relative, including threats to evict her.[11]

CPM allegedly posted eviction notices on the apartment door, slipped notices under the door and changed the locks on the door.[12]  The one eviction notice Watson describes was filed in May of 2017 while his relative was residing at Centennial House, a rehabilitation facility located next door and also owned by CPM.  The basis for the eviction filing was that the relative had urinated on the floor and it was not cleaned up, resulting in an odor.  Watson claims that this was a pretext for eviction.  He alleges that the floors and carpets in his relative's apartment were constantly flooded due to CPM's poor maintenance of the residence; and the wet, flooded carpet caused the odor.  He contends that the real reason CPM filed for eviction was because he refused to mop a wet carpet.[13]

Another "threat of legal action" came in the form of "keeping the relative in a rehab facility far longer than was necessary."[14]  Watson alleges that the manager and social coordinator of the Towers "liased with social work staff" at Centennial House to keep his relative in rehab from December of 2015 through March of 2016, which was just long enough for the rehab facility to receive Medicare funding and the Towers to collect rent from his relative simultaneously.  He claims that the Towers' social coordinator "wheeled"

---

[10] *Id.* at 8.

[11] *Id.*

[12] *Id.*

[13] *Id.* at 9.

[14] *Id.*

3

his relative from the rehab facility to her apartment to have her sign checks authorizing the payment of rent to the Towers, and then wheeled her back to the rehab facility. The Centennial House social worker allegedly made "fraudulent diagnoses" of his relative in order to justify keeping her at the rehab longer than necessary.[15]

Watson's claims against PPH are for health care fraud. He states that in March of 2018, the hospital filed a petition for appointment of a guardian for his relative on the grounds that it was unsafe to discharge her to her apartment under Watson's care. As the basis for appointment of a guardian, the hospital cited soiled clothing, dirty bandages, a diagnosis of dementia and seven emergency room admissions between January and March of 2018.[16] Watson disputes these grounds for guardianship, asserting that PPH made several fraudulent statements and omitted relevant information in the petition to cover up its medical malpractice and "as an excuse to fast track [his] relative into long term care."[17]

Specifically, he alleges that PPH fraudulently diagnosed his relative with dementia. He claims her poor condition was actually caused by a visiting doctor's over-prescription of pain medications and sleeping pills that induced her into a coma-like state.[18] He claims that PPH falsely attributed his relative's soiled clothing to his poor caregiver performance. In his defense, he avers that it was impossible for him to bathe his relative while she was comatose, which condition was caused by the visiting doctor's malpractice. Watson

---

[15] *Id.*

[16] *Id.* at 9-10.

[17] *Id.*

[18] Watson also alleges that the visiting doctor prescribed narcotics for his relative over the phone without seeing her in person. *Id.* at 8.

claims that PPH failed to state in its petition that its visiting wound care nurses, who should have attended to his relative twice a day, generally only visited her every other day, and it was *their* malpractice which caused his relative's bandages to be dirty. Watson avers that PPH also omitted from the guardianship petition that his relative was admitted to PPH's emergency room approximately twenty times between March of 2016 and December of 2017.[19]

Watson's relative remained at PPH from March of 2018 until October 2018, when she was discharged to a nursing home. Sometime during that hospital stay she was evicted from her apartment.[20]

With respect to damages, Watson alleges that he had to give up his full time job as a chemistry professor in order to serve as a caregiver to his relative, for which he was paid only poverty wages, and that he has not been able to re-enter the work force in his field. He claims lost wages in the amount of $250,000.00. He also seeks damages in the amount of $6,000.00 for his relative's personal property, which he claims was lost when she was evicted in 2018.[21]

**Standard of Review**

Because it appears that he is not capable of paying the fees to commence this civil action, Watson will be granted leave to proceed *in forma pauperis*. As the plaintiff is proceeding *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) applies, which requires the

---

[19] *Id.* at 9-10.

[20] *Id.* at 10.

[21] *Id.*

court to dismiss the complaint [*sua sponte*] if it fails to state a claim upon which relief may be granted.

Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). This means that all well-pleaded allegations in the complaint are accepted as true and viewed in the light most favorable to the plaintiff. *Powell v. Weiss*, 757 F.3d 338, 341 (3d Cir. 2014). Additionally, the *pro se* plaintiff's pleadings must be considered deferentially, affording him the benefit of the doubt where one exists. *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244 (3d Cir. 2013) (citing *Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011)). Nonetheless, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Although this standard "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555).

To survive a motion to dismiss, the complaint must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must allege facts that indicate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleading only "facts that are 'merely consistent with' a defendant's liability" is insufficient and cannot survive a motion to dismiss. *Id.* (citing *Twombly*, 550 U.S. at 557). With these

6

standards in mind, we shall accept as true the facts as they appear in Watson's complaint and draw all possible inferences from those facts in his favor.

## Discussion

Watson asserts claims based on three federal criminal statutes, 18 U.S.C. §§ 1035, 1589, and 1595.[22] Section 1035 makes it a crime to falsify, conceal, cover up or make a materially false or fraudulent statement in connection with the delivery of or payment for health care benefits. Sections 1589 and 1595 make it a crime to hold another person in forced labor and provides a civil remedy.

Criminal statutes generally do not give rise to a basis for civil liability. *See Brown v. City of Philadelphia Office of Human Res.*, 735 F. App'x 55, 56 (3d Cir. 2018) (per curiam) ("Brown alleges that the defendants violated various criminal statutes, but most do not provide a private cause of action."); *Brown v. Progressive Specialty Ins. Co.*, Civ. A. No. 17-5409, 2017 WL 6210283, at *1 (E.D. Pa. Dec. 7, 2017) ("[F]ederal criminal statutes generally do not provide a basis for civil liability.") (citing *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 190-91 (1994)), *aff'd*, 763 F. App'x 146, 147 (3d Cir. 2019) (finding the district court correctly concluded that "federal question jurisdiction could not be premised on Brown's alleged violations of criminal statutes as they neither authorize civil actions nor create civil liabilities").

Section 1035, which makes it a crime to falsify, conceal, cover up or make a materially false or fraudulent statement in connection with the delivery of or payment for health care benefits, does not create a private cause of action. *Lorah v. Christiana Care Hosp.*, No. CV 16-1018-LPS, 2017 WL 3396448, at *3 (D. Del. Aug. 8, 2017) (citing

---
[22] *Id.* at 4.

7

*Avdeef v. Rockline Indus., Inc.*, No. 4:12-CV-879-Y, 2013 WL 12099295, at *2 (N.D. Tx. Apr. 4, 2013); *Whorton v. Cognitians, LLC*, No. 3:18-CV-307, 2019 WL 1099800, at *3 (S.D. Ohio Mar. 8, 2019).

The only defendant against which Watson appears to assert claims of health care fraud is PPH. He alleges that PPH made several fraudulent statements and omitted relevant information in the guardianship petition relating to his relative in order to cover up its medical malpractice. Because § 1035 is a criminal statute which does not create a private right of action, Watson fails to state a claim pursuant 18 U.S.C. § 1035. Therefore, his claims against PPH shall be dismissed.

The other statutes Watson cites, 18 U.S.C. §§ 1589 and 1595, together provide a civil remedy for one who has been forced to provide labor. Section 1589(a) states that anyone who

> knowingly provides or obtains the labor or services of a person . . .
>
> (1) by means of force, threats of force, physical restraint, or threats of physical restraint to that person or another person;
>
> (2) by means of serious harm or threats of serious harm to that person or another person;
>
> (3) by means of abuse or threatened abuse of law or legal process; or
>
> (4) by means of any scheme, plan or pattern intended to cause the person to believe that, if that person did not perform such labor or services, that person or another person would suffer serious harm or physical restraint.

18 U.S.C. § 1589(a).

Section 1595 creates a private civil cause of action for violations of § 1589. That statute provides that:

any individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

Even though individuals may bring a private civil action under § 1589, Watson fails to allege facts sufficient to show that any of the defendants forced him to perform labor in violation of this statute. Instead, he makes conclusory statements without any factual support.

With respect to his claims against PCA, it is unclear from the allegations in the complaint how PCA forced Watson to perform unpaid labor. While he alleges that PCA gave him "no designated time off" in the caregiver role, that the role was "fully binding" and that his responsibilities could be terminated only by "death or institutionalization of either the caregiver or relative," he simultaneously claims that PCA did not provide him with a contract or other document specifying his responsibilities as a caregiver. Without a contract, Watson fails to point to what authority or power PCA had to force him to remain a caregiver without pay or with a paltry paycheck.

Similarly, while Watson contends that PCA "made false statements regarding the scope and nature of [his] caregiver tasks," he fails to identify with any specificity the content of these statements or to whom they were made. He alleges that PCA "misrepresented" to staff at CPM and PPH[23] that it was paying him to be a caregiver to

---

[23] Watson's relative was hospitalized at PPH numerous times between 2016 and 2018. *Id.* at 10.

his relative when in fact he was only "paid a welfare check." He claims that these misrepresentations "supported service providers in demanding forced labor."[24]

The only possible basis Watson cites to support his claim that PCA "forced" him to stay in the caregiver role was that a PCA employee threatened to accuse him of elder abuse. He alleges that when he told the PCA service coordinator about his concerns regarding a visiting doctor's over-prescribing narcotics to his relative, she responded by stating that she liked the doctor, and two months later, she "made assertions that [Watson] was possibly guilty of elder abuse." This does not amount to forced labor under the statute.

With respect to his claims against CPM, Watson fails to allege facts sufficient to show that CPM staff forced him to perform unpaid labor. He alleges that CPM employees forced him to move furniture, clean walls and assist with bedbug inspections by making false and unjustified threats of eviction of his relative. The only eviction filing he described he claims was filed on false grounds. He claims they threatened to evict his relative because he failed to clean up urine in his relative's apartment when they were actually retaliating against him for refusing to mop a wet carpet that was in that condition as a result of CPM's allowing the residence to get flooded.

This allegation does not rise to a violation of forced labor. Even if CPM's threats and attempts to evict his relative were done without legal basis, Watson has failed to show a causal connection between his refusal to perform the labor tasks CPM told him to do and forcing him to remain a caregiver without pay. There are no allegations nor inferences that show Watson was the victim of involuntary servitude.

---

[24] *Id.* at 9.

## Conclusion

Watson shall be granted leave to proceed *in forma pauperis*. Watson fails to state a claim pursuant to 18 U.S.C. § 1035 for health care fraud because it is a criminal statute that does not create a private right of action. Watson fails to state a claim pursuant to 18 U.S.C. § 1589 for forced labor because he has failed to allege facts sufficient to state a claim under that statute. Therefore, pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the complaint will be dismissed.

/s/ TIMOTHY J. SAVAGE J.